Good morning. May it please the Court, my name is Celia Ruman and I represent Ms. Colman. The District Court in this instance committed a number of errors warranting reversal, but given the time limitations that I have before this Court and the fact that I'm going to try to save a couple of minutes for rebuttal, I'm going to try to focus on two of them unless the Court has questions about the others. I'd like to discuss the erroneous use of the drug evidence as demonstrative in this case, and the misinstruction by the District Court on the definition of possession. I'd note at the outset that both of these issues go to the central question that the jury had to resolve in this case, that is whether Ms. Colman knowingly possessed the drugs. There was no dispute and in fact, as the Court knows, there was a stipulation that what was in the vehicle was in fact drugs. The question before the jury was, did she knowingly possess them at the time she came to the port of entry? With regard to the presentation of the drug evidence as demonstrative, it's problematic for three reasons. The first is, it's our position that it violates due process to present evidence as demonstrative when there's no standards by which the District Court decides whether something is demonstrative at all. Moreover, there's no standards to guide the jury's consideration of that evidence in a criminal case. Moreover, in this case, the evidence at issue of the drugs wasn't demonstrative evidence. It was in fact real evidence and should not have been put before this jury in the absence of it being admitted under the federal rules of evidence. And finally, it was problematic in this case because the evidence at issue here, given the stipulation, could not have been admitted. Focusing on the due process issue, as I said, it violates due process because there are no standards for the District Court or for the jury in considering this evidence. Why shouldn't it have been admitted if there's a stipulation? Well, it shouldn't have been admitted and I would suggest that it couldn't have been admitted for three reasons. The first is that the, in order to be admitted in this case, the evidence had to meet the evidentiary standards for admissibility. And the stipulation in this case erased the relevance, essentially, of this piece of evidence. The stipulation was that this was cocaine and that it was in the vehicle. And so there was no question that the jury had to resolve with regard to whether there were drugs in the vehicle. It had been answered for them with a stipulation. So there was no added benefit, in effect, from this evidence. Moreover, it couldn't have been admitted in this case because the government didn't meet the standard for, for example, chain of custody. There was no evidence on chain of custody. And finally, with regard to the... But isn't that what the stipulation avoided taking the court and jury's time to get to you? Isn't that what stipulation really did? It said, okay, it's real drugs, it was in the car, you don't have to go through all the foundation business. Certainly that's what a stipulation is supposed to do. But it precludes a defendant from challenging those questions. When there's a stipulation, a defendant can't challenge whether there's a foundation for it. And in this case, they have the stipulation and they're getting two bites of the apple. Moreover, I would... Let me ask you this, if I may now. What if the evidence... There was no stipulation. So they have the Customs and Border Patrol agent stop the car and found the drugs, come and testify. I feel tested it. We have the chemists, we have the forensic report. Yes, this is cocaine. How much was it? It was, you know, five kilograms or whatever. Under that circumstance, are you contending that they would not be able to show the cocaine to the jury? If they met the standard in the first instance, but not in this case, because there's also the 403 problem. Well, but my point simply is, the stipulation avoided the necessity for that testimony. But what if there'd been no stipulation and there had been that testimony? Are you saying that it would have been the same kind of error because those points had been established? I don't think it would have been the same kind of error. Why not? What difference is there? Well, I think because of the 403 problem in this case, and also because of the way that the drugs were used in this case. When evidence is actually admitted, the jury is told how to consider that evidence. And in this case, the district court, when it showed the evidence to the jury, told the jury that they could take it into account, but didn't tell them how. And then when we get to the final instructions question, in the final instructions, the district court gives the instruction, I think it's this court's model 415 on summary evidence. But the district court actually edited out a couple of parts of the instruction. It edited out the part of the instruction that told the jury why they were being presented with this evidence that wasn't admitted, and it edited out the part of the instruction that told them what to do if this non-admitted evidence conflicted with the evidence that was actually admitted. That's all part of the model instruction this court has designed. And in this case, the use of the drugs was confusing, and I would argue under 403 amounted to evidence that confused the jury more than helped the jury in this instance, because they didn't know what to do with it. And that gets back to the due process problem, because there's no standards. The district court, this court hasn't defined the standards for demonstrative evidence. The federal rules of evidence are silent on what qualifies as demonstrative evidence, and so what we end up with is an absurd result where the district court can identify something that is, in fact, not only evidence that could be evidence of the crime, it's actually the physical manifestation of one of the elements of the offense, and say, you can consider this in this case, even though it wasn't admitted. And so, because there's no standards, a defendant in a criminal case has no way to challenge the admission of that evidence, to know whether it's, if it's being used appropriately by the jury. There's no way to know what the appropriate... Well, what if, I mean, demonstrative evidence is kind of a staple of courtroom, of trials. Somebody gets up from the stand and draws a hand-drawn map of the intersection. It's marked for identification Exhibit Number 23, but it's, the court says it's demonstrative evidence. It helps to show the jury so it can grasp more tangibly what they're talking about. And so what's, I can't really, what's the big deal with saying, okay, if I understand the government's argument is that it went to the issue of knowing possession, being hidden in the roof, and candidly, I have no idea how big a package this is, okay, and whether it's like this. I have no idea. It would seem to me to be helpful to the jury, particularly if that's the government's contention, to actually see it. Well, first of all, I think there's a distinction between the diagram that someone draws in the courtroom and the actual evidence of the crime. I think that before evidence that is part of the crime, the physical evidence of the crime, is put before the jury, that's what the federal rules of evidence are designed to do, to make sure that the evidence comes before the jury in a way that meets, I would say, the fundamentals of due process, that there's some relevance and it's not unduly prejudicial, given its probative value. So I think there's a distinction between those two things. With regard to the question of volume, on appeal, the government has argued that this goes to volume. That wasn't what they argued before the district court. I'm sorry, I thought I heard someone say something. That wasn't what they argued before the district court. And it's interesting, because the drugs in this case were repackaged by the government. So when they were presented to the jury, they weren't in the form that they were when they came out of the vehicle. They had actually changed shape in a way that would confuse the jury. And so this circumstance of volume, I think, is interesting. I also think it's interesting that the district court, I think at page 260, doesn't admit it on the question of volume. The district court admitted it, saying it was relevant to show the quantity of drugs. The quantity of drugs had, in fact, been the stipulation. So the government's theory about why this was admissible was rejected by the district court. The district court said what we're going to let this in for is the quantity. The quantity itself had been stipulated to. There are demonstrative evidence. There is demonstrative evidence. And the federal rules of evidence identify one category of them, summary evidence, under 1006. And summary evidence is only admissible if there's some complex question that the jury needs instruction on. And so it limits even the use of demonstrative evidence in those categories, in those cases. Here, this wasn't instructive, really, on any question. There wasn't a complicated question about this that the jury had to resolve. This wasn't pedagogical. And moreover, saying something is pedagogical doesn't define whether it's admissible in a criminal case. There are all kinds of evidence that is pedagogical and would be instructive for the jury. For example, if a defendant confesses, that might be information that would be helpful to the jury in determining whether this was the crime, the defendant committed the crime that was charged. But it can't be put before the jury unless it meets the standard for admissibility under the federal rules of evidence. I'll get off this dime that I've been standing on, but what if they had taken a photograph and introduced the photograph? I would note that in this case they did introduce the photographs of the drugs coming out of the vehicle, which is an additional reason why this was unnecessarily cumulative. Was that introduced as demonstrative or did that go back to the jury? That was admitted into evidence. This evidence wasn't admitted to the jury, and because it violates due process to do this without standards. You don't normally send cocaine back to the jury. That's consistent with my practice as a trial lawyer. I never saw that happen. But what this was a case that turned on the question of knowledge. And there wasn't any direct evidence of knowledge. She denied knowledge of the drugs. There's no fingerprints linking her to the drugs. So this was a question the jury had to conclude inferentially in this case. Moreover, the district court in this instance highlighted this piece of evidence in a way that no other evidence was highlighted. The agent from the witness stand was able to hold up the drugs and show them during testimony. Once the testimony was over, the district court invited the witness to come down and during a break stand next to the jury and invited them to come closer and to take a look at this evidence. So it highlighted this piece of evidence. It wasn't harmless because of the connection with the jury instruction that I talked about. The modification of the jury instruction in this case amounts to confusion in the jury's mind, I would suggest, with regard to what to do with this evidence. And the government in its brief says that the drugs were only in the room for 16 minutes. And I think if the court looks at the transcript, it's clear that's not correct. We don't know how long the drugs were in the room because the testimony demonstrates that at the beginning of the testimony, the agent says that references the drugs being in the room. And then the testimony goes through and then there's a 16-minute break where the court invites the witness to come closer and to take a look at this evidence. It was 45 pounds, so about 20 kilograms. That's my recollection of it, if I'm wrong. For some reason, I thought it was 5. I must have misread the record. They brought in 5 out of the 20? No, they brought in all of them. They brought in two boxes, according to the record. As I understand the record, I wasn't trial counsel, but it appears that they have both boxes and the witness holds one of the boxes and there's some kind of plastic wrapping inside the box that has the actual drugs in them that they open and show to the jurors. So they have all of the drugs in the room to, as the court said, to show them the quantity of drugs that were involved. And what, if anything, was admitted into evidence? It was, well, none of the drugs were admitted into evidence. The stipulation was admitted into evidence. And then there were photographs, I believe there were photographs of them dismantling the roof of this vehicle. So they had both of those, that evidence before them also that was admitted. Turning to the question of the misinstruction, the government concedes that it was error. The district court erred in the instruction that it gave. The error was plain. Wait a minute. I've got a problem with this, I've got to tell you. First of all, they had written instructions. Did the written instructions go back to the jury room? It's not entirely clear. We don't know whether they had a copy of them when the court read them, or did they? Do we know? What the court says is, he tells the jury when he's reading the instructions, you either have or will have the instructions. So it's not clear when they got the instructions. I assume that they would have gotten the instructions. I read your instructions a lot. It's part of my job. And there are times when I louse it up. I mean, lawyer says judge, judge may we approach. It really seems to me that's a crucial mistake on the part of counsel, because it could have been taken care of. Ladies and gentlemen, I misspoke. Ignore what I just told you. The proper instruction is, I want to emphasize it's in the conjunctive, not the disjunctive. And here, something that is easily curable, is anything imaginable, for whatever reason, went right by the lawyer. And I just have a real problem with saying that the jury was misinstructed, provided they had the written instructions. And apparently the record indicates that they do. That they did. I'm being very candid with him. And I appreciate that. I appreciate that. I think that your concern in the reality of plain air standard in order to justify reversal at this stage. And I would suggest to the court that plain air is met in this case. And it's met because all the components are present in this case. This was, the elements of the offense were not explained through other instructions. So there's nothing else in the instructions that could have told the jury that what the judge said was erroneous. Now, they may have had the instructions. We don't really know from the record. It suggests that they would have had the instructions. But even if they had them, there's no indication that they would have known they had a reason to look at them. Because they would have no reason to know that the law was erroneously read to them. So I think that the presumption should go to the instructions that were given to the jury. In this circumstance, where taken as a whole, the instructions don't address it. I see that my time is quickly winding down or over. So I would like to reserve a little bit of time if I could have a minute. We'll give you a minute. Thank you. May it please the court. My name is Mark Kokanovich. I'm an Assistant United States Attorney in the District of Arizona. And I'm here representing the United States. I'll address first the evidence point. As Judge Carr pointed out, there was a stipulation in this case. The stipulation expressly states that Exhibit 1 was cocaine. And it was more than 5 kilograms of cocaine. And that may be where you were getting the 5 kilograms, Your Honor. And that obviates the need to bring in a chemist. And it obviates the need to have... What was the purpose of this demonstrative evidence? What was the purpose of the demonstrative evidence? Of bringing it in and showing it to the jury. Well, there were a number of purposes, Your Honor. One of them was it completed the stipulation. The stipulation by itself isn't self-fulfilling. It specifically references Exhibit 1. Without Exhibit 1 being at least shown to the jury, the stipulation doesn't make much sense. So it completes the stipulation in that Exhibit 1 is what the stipulation is referring to itself. But Exhibit 1 never came into evidence. I mean, I said somewhat facetiously a moment ago, we don't send coke back into the jury room. We don't send guns back into the jury. But they are often admitted. That's correct, Your Honor. The jury is instructed, if you wish to inspect this item, please notify the clerk and you'll have an opportunity to see it once again. That's true. But it's not admitted in this case. It wasn't admitted, but it was shown to the jury. And so it was marked for identification purposes. It was testified about. And it was shown to the jury, but it wasn't technically admitted into evidence. And there were curative instructions. What about the repackaging issue? Was she referring to the fact that they put it in their own boxes? Was it in the original wrappings? Your Honor, it's unclear from the record how exactly it was shown to the jury. It was shown, but there were no objections to how it was being shown to the jury. In fact, one of the telling things that the defense counsel at trial said was, well, if they're just going to show the boxes, I don't necessarily have a problem to give the jury an idea of the size. I think that's what the government's, I think that's what they're wanting to establish. That was one of the last things he said before they did exactly that. So we disagree that this evidence could not have come in. This evidence absolutely could have come in, but it was limited in the way it came in because there was a stipulation and because it wasn't necessary to prove the case. But it certainly was allowable to have What I was trying to find out about is what I think Judge Carr asked about, to think if it was shown to the jury or whatever connection it had with the jury, if it was for the purpose of showing that she should have known that this cocaine in this form put in the car, she would know that it was there. Then the question of was it in the same shape and form that it was found in the car is relevant. Otherwise, I don't have the problem that I'm concerned about. To say to a jury, look at these packages, she must have known if this is the way they were when she transported them. And it was not in the same form it was when she transported it. That would be a problem, but can you answer that for me? I hope to address your problem in several ways, Your Honor. First of all, there were pictures and photographs of the evidence that came in. So at most, this would be harmless error. There were photographs of the drugs as they were packaged in her car that were admitted into evidence without objection. So this, I think, is really a side issue. Secondly, the volume of 20 kilograms of cocaine, which is a large amount of cocaine, but it's hard to know how dense cocaine is. The average juror may not know. That's why it was demonstrative to bring in all 20 kilograms in two boxes and have it be just the cocaine itself viewed by the jury to kind of get an idea of the packages. Well, I'll find out. I think the repackaging, I would assume, probably refers, they didn't bring it in the car with the cocaine put back in the car the way it was found. They took it out, they put it in a bunch of boxes and brought it into court that way. They did have it in boxes from the transcript. But I think the real issue is in terms of the packages themselves, whether they were one pound or two, however they were contained as separate units. But we can ask counsel at trial. The evidence that's in the record demonstrates that there was no objection to how it was being shown at the time it was being shown. This is an entirely new argument that was raised. Repackaging doesn't matter, close quote. Yes. I don't believe repackaging matters, Your Honor, in this context, given all the other evidence that was admitted and the curative instruction that was given at the end, that this wasn't even evidence of any fact that the jury could consider. That was, the defendant has made a lot of how there's not anything that the defendant has and there's no instructions to the jurors for how they're supposed to treat demonstrative evidence. That's just not the case. As Judge Carr pointed out, demonstrative evidence has been allowed to be introduced at trial for a long time. Even in the appellant's opening brief, they concede that it's a matter for the district judge to decide on abusive discretion. That's how it's reviewed on this court. In the very limited manner in which this evidence was displayed to the jury in this case, especially given the assent of trial counsel for defendant, it's impossible. If I'm a jury and you say this isn't evidence of any kind, I'd say, why am I being shown this? What am I supposed to do? Is it something I don't take into account or is it something I do take into account? Maybe this doesn't affect the outcome of the case, but maybe it's just curiosity and maybe it's because I'm not a trial judge and I don't understand the practicalities of this. But I just don't understand what the jury's supposed to do with this. Your Honor. They're showing me this, so what? What's the purpose of it? Your Honor, I think it's demonstrative for the size of cocaine. Most jurors, hopefully, hopefully the ones that are familiar with cocaine aren't on the jury. Well, it's basically a prop. Again, I teach trial practice and one of the things I say is it's tell and show. First you tell the jury and then you show them whatever it is I interrupted your answer, though. That's fine, Your Honor. I think that's a better answer than I could have given and Your Honor certainly has more experience as a trial judge than I do. But I think that it's long-standing practice and in the defendant's opening brief they concede that it's long-standing practice. The case that they cite about how, and it's not clearly defined, but as Judge that don't have clear meaning or they're not clearly distinguishable. Wittgenstein could teach us a lot about words and the usage of words, but those are academic questions when it comes to how a trial is conducted and whether or not there's proof beyond a reasonable doubt at the end of the day that this person was guilty. And in this case they don't make an argument about sufficiency of the evidence, although they allude to the fact that the evidence was very weak. In this case we have an individual who is unemployed, who pays $3,500 in cash for a car, travels back and forth across the border multiple times in a short period of time, has two different driver's licenses, one from Arizona, one from Nevada. The one from Arizona has a fictitious address on it. The evidence was very strong and it did not take the jury long to convict this individual for knowingly possessing cocaine and for importing cocaine. And that brings us to the second point that was argued by counsel. I think the other two points are clearly, that she raises that she didn't argue, are clearly decided by the case law in this court, and I won't address them unless the court has any questions about them. But on the slip of the tongue that the judge made, that slip of the tongue is disjunctive, but there's a conjunctive portion of that instruction that follows the mistaken disjunctive portion. It says, has power and intention to control it. And it's not just possession we're talking about, it's possession with intent to distribute. The other one I thought came before, is that right? You're right, Your Honor. There are two clauses there, but even the mistaken disjunctive, there's a conjunctive that follows it, and that language is that the judge mistakenly said, or has knowledge or has power and intention to control it. So it's basically solved there, but then it's possession, not just possession, like possession of a firearm, where this may have an impact, but it's possession with intent to distribute. So there was no question about whether or not she had intent to distribute in the minds of the jury. Furthermore, she was convicted of knowingly importing cocaine. There's no question about the correctness of the jury instructions on knowingly importing cocaine. The knowledge issue is a non-issue. I believe so, Your Honor. If they had to find it for one, then... I think it's clearly determined on this record. All right, thank you, counsel. Thank you. All right, and you wanted a minute. Just a minute. Just a minute. Just a minute, I promise. The government argued that the evidence completed the stipulation, the testimony completed the stipulation. They didn't need the evidence, the physical evidence to do it. The objections as to how the evidence was presented, counsel was speaking about the presentation of the drugs in the boxes, and they were referencing the sealed boxes at that point, and the district court ultimately changed the manner in which it was presented. So the objection that he made earlier clearly to this evidence was preserved. The curative instruction in this case, as the court noted, doesn't tell the jury what to do with this evidence. They have it, they're told to take it into account, but they don't know why it's been presented to them. And so the instructions compounded this error. The court noted that trial strategy is tell and show. To either tell or show something in a courtroom, it has to meet the standard for admissibility. And there are a lot of things that would be very helpful for a jury to see, but we don't let them see them. And so I don't think that defines the question of whether it's admissible or not. Oh, the repackaging issue. I mean, what happened to, quote, repackage it? If you know, and this record shows. My understanding, because I wasn't the trial counsel, my understanding is the drugs were wrapped in, I think, one kilo packages and placed in the ceiling. All the packaging was the way I understood the record. And with that, I'll submit. Thank you, counsel. Thank you. The case just argued will be submitted. The court will stand in recess for the day.
judges: Carr, Reinhardt, Smith